UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN MIKOLON and DONIELLE
PARQUETTE

      Plaintiffs,

  v.

CITY OF CHICAGO, et al.,

      Defendants.

No. 14 CV 1852

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

While at the apartment of his girlfriend (Donielle Parquette), Stephen Mikolon was arrested by Chicago police officers. Parquette's apartment was also searched. Mikolon and Parquette filed suit in federal court, alleging, among other things, that the arresting officers had intentionally discriminated against Mikolon in violation of his right to equal protection, and that the City of Chicago had maintained a series of widespread policies and customs that ultimately caused the plaintiffs' constitutional injuries. The defendant officers now move to dismiss the equal-protection claim, and the City moves to dismiss the policy-or-custom claim (*i.e.*, the *Monell* claim). For the reasons discussed below, both motions are granted.

I.    **Legal Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." The complaint need not set forth detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). But it must present enough "factual matter, accepted as true, [that the] 'claim to relief . . . is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion to dismiss, I accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

**II.    Facts**

On October 9, 2012, Stephen Mikolon went to the apartment of his girlfriend, Donielle Parquette. [1] ¶ 6.[1] While Mikolon was at the apartment, nine officers with the Chicago Police Department—including Jorge Martinez and Sergio Martinez—arrived. *See id.* ¶¶ 4, 7–8. The officers searched Parquette's apartment, and J. Martinez and S. Martinez arrested Mikolon. *See id.* ¶¶ 8–9.[2] According to Mikolon and Parquette, the officers had no legitimate reason to conduct their search or to arrest Mikolon. *See id.* Mikolon and Parquette allege that the officers instead "made an agreement to violate [their] rights," and to that end filed false (or

---

[1] Citations to the record are designated by the district court document number, enclosed in brackets.

[2] The complaint states that the defendant officers searched "Mikolon's residence," [1] ¶ 8. I assume this to be a typographical error: the complaint alleges that, on that date and at that time, the defendant officers were present at *Parquette's* apartment, *see id.* ¶¶ 6, 8, and I cannot reasonably infer that all of the officers were simultaneously in two places at once. I therefore assume that plaintiffs intended to allege that the officers searched Parquette's residence, not Mikolon's.

2

incomplete) police reports that caused false charges to be brought against Mikolon. *See id.* ¶¶ 10, 12. The charges were later dismissed. *Id.* ¶ 11.

Mikolon and Parquette sued the officers in federal court, asserting various claims pursuant to 42 U.S.C. § 1983, as well as two state-law claims. The complaint included: Parquette's claim against all defendant officers for unreasonable search and seizure under the Fourth Amendment (Count I); Mikolon's claims for unreasonable search and seizure (also against all defendants) and false arrest (against only J. Martinez and S. Martinez) (Counts II and III, respectively); Mikolon's claims against J. Martinez and S. Martinez for conspiracy to violate Mikolon's constitutional rights (Count IV), and violation of Mikolon's "class-of-one" equal-protection rights (Count V); both plaintiffs' *Monell* claim against the City of Chicago (Count VI); a claim for indemnification by Chicago pursuant to Illinois statute (Count VII); and a state-law claim by Mikolon (against J. Martinez and S. Martinez) for malicious prosecution (Count VIII[3]). *See id.* ¶¶ 14–49.

Before me are: (1) the officers' motion to dismiss Mikolon's class-of-one claim (Count V), [17]; and (2) the City's motion to dismiss plaintiffs' *Monell* claim (Count VI), [18].[4]

---

[3] This claim is labeled "Count VII" in the complaint. *See* [1] at 10. As plaintiffs have already included a different Count VII (indemnification under Illinois statute), I assume that plaintiffs intended to label this last claim "Count VIII."

[4] All of the named officer defendants bring the motion to dismiss Count V of the complaint, [17], even though only two of them (J. Martinez and S. Martinez) are actually named as defendants to that count, *see* [1] at 6.

3

## III. Analysis

### A. The Class-of-One Equal Protection Claim (Count V)

The Equal Protection Clause of the Fourteenth Amendment has generally been understood to protect individuals from government discrimination based on class-based distinctions such as race, national origin, or sex. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citing *Loving v. Virginia*, 388 U.S. 1, 8–12 (1967); *United States v. Virginia*, 518 U.S. 515, 533–34 (1996)). However, the Equal Protection Clause has also been understood to protect individuals even when the "classification" employed by a local government actor is the "singling out [of] just one person for different treatment," where such singling out is done for "arbitrary and irrational purposes." *Id.* These so-called "class-of-one" claims may be brought where the plaintiff alleges irrational or malicious application of law-enforcement powers. *Id.* (citing *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009)).

In *Del Marcelle v. Brown Cnty. Corp.*, the Seventh Circuit, sitting *en banc*, split three ways without settling the standards for proving a class-of-one claim. *See* 680 F.3d 887, 889 (7th Cir. 2012); *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 775 (7th Cir. 2013). It is clear, however, that at a minimum a class-of-one plaintiff must show: (1) that he was intentionally treated differently "from others similarly situated"; and (2) that there was "no rational basis for the difference in treatment." *Fares Pawn, LLC v. Ind. Dept. of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Charleston*, 741 F.3d at 775 (discussing the "least demanding standard that

4

could apply") (citing *Del Marcelle*, 680 F.3d at 913 (Wood, J., dissenting); *Olech*, 528 U.S. at 564). Mikolon's class-of-one claim does not meet even this less-exacting standard.[5]

Mikolon alleges that, in conspiring to cause his arrest and criminal prosecution, Officers J. Martinez and S. Martinez violated Mikolon's equal-protection rights by "singl[ing him] out for false arrest [and] unlawful searches." [1] ¶¶ 31, 33. The defendants "intentionally treated [him] differently" from others who were similarly situated, says Mikolon, because they harbored an "illegitimate animus" toward him. *Id.* ¶¶ 32, 34. But these allegations merely restate the legal elements that Mikolon must prove in order to prevail on his class-of-one claim. They do not—as they must in order to survive defendants' motion to dismiss—offer any factual support for Mikolon's contention that he was targeted by the officers for arbitrary and irrational treatment. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [under Rule 8]." (citing *Twombly*, 550 U.S. at 555)).

One way to adequately allege intentional discrimination is to "show that the state treated similarly situated individuals more favorably." *Charleston*, 741 F.3d at 775 (citing *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012); *Olech*, 528 U.S. at 564). But Mikolon has made no such showing. Mikolon states only that he was "intentionally treated . . . differently" from those who were

---

[5] A more demanding standard requires that the plaintiff also prove that the government official allegedly responsible for the irrational treatment acted out of animus or a "bad motive" toward the plaintiff. *See Fares Pawn*, 755 F.3d at 845; *see also Del Marcelle*, 680 F.3d at 889 (Posner, J.) (requiring the plaintiff to show that the official acted "for personal reasons, with discriminatory intent and effect").

similarly situated, [1] ¶ 32. As the Seventh Circuit has made clear, "saying the magic words is not enough: [Mikolon] must offer further factual enhancement," *Charleston*, 741 F.3d at 775 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

Mikolon argues that he need not identify a similarly situated person in his complaint, because identification of a so-called comparator is unnecessary at the pleading stage. *See* [23] at 3 (citing *Geinosky*, 675 F.3d at 748 n. 3). In *Geinosky*, the Seventh Circuit observed that, "[e]ven in a case where a plaintiff would need to identify a similarly situated person to prove his case, [there is] no basis for requiring the plaintiff to identify the person in the complaint." 675 F.3d at 478 n. 3 (emphasis omitted); *see also Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013) ("Plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints.") However, *Geinosky* and its progeny do not absolve class-of-one plaintiffs from having to support their claims with facts plausibly suggesting that those plaintiffs were indeed victims of intentional discriminatory treatment.

In *Geinosky*, the plaintiff alleged in his complaint an "extraordinary pattern" of baseless law-enforcement actions taken against him (a slew of unwarranted parking tickets), which "clearly [told] a story in which [the plaintiff] was targeted" by the defendant officers. *See* 675 F.3d at 748–49. The alleged conduct, in other words, itself "d[id] the work of demonstrating the officers' improper discriminatory purpose," *id.* at 748, such that requiring the plaintiff to address comparators in his

6

complaint would have been redundant, *see id.* at 748–49. Similarly, in *Capra*—where the Seventh Circuit reiterated that class-of-one plaintiffs need not describe comparators in their complaint, *see* 733 F.3d at 717–18 (quoting *Geinosky*, 675 F.3d at 748 n. 3)—the plaintiffs alleged facts from which a reasonable inference of targeted animus (and thus an intent to discriminate) could be drawn, *see id.* at 718 (discussing paragraph 51 of the complaint, in which the plaintiffs asserted that "similarly situated taxpayers *who were not suspected of associating with Rep. Paul Froehlich* were not denied the right to petition the Board of Review" regarding the rescission of their tax reductions) (emphasis added) (internal brackets omitted). But where, as here, the facts as alleged do not plausibly suggest intentional discrimination, the plaintiff may not proceed on the mere assertion that there exist, somewhere, similarly situated individuals who were not similarly mistreated. *See Charleston*, 741 F.3d at 776 (opining that the plaintiff "needed to mention [the purported comparator] in his actual complaint").[6]

In short, while Mikolon is correct that he is under no *independent* obligation to name or describe in his complaint specific comparators, he may not proceed with his class-of-one claim absent factual support for his (otherwise conclusory) allegation that the police officers intentionally treated him differently from others

---

[6] Mikolon also relies on *Cahn v. City of Highland Park*, No. 11 CV 06082, 2012 WL 4483480 (N.D. Ill. Sep. 25, 2012), in support of his argument that he need not describe in his complaint any similarly situated persons who were treated differently by the defendants in this case. *See* [23] at 3 (citing *Cahn*, 2012 WL 4483480, at *4). In *Cahn*, however, the plaintiff pleaded facts suggesting that he had indeed been targeted and treated differently by city officials. *See* 2012 WL 4483480, at *4 (discussing the plaintiff's allegation that he was the *only* person who had ever been prosecuted under the city code at issue). Mikolon's complaint, by contrast, lacks any factual allegations of this kind.

who were similarly situated.[7] Defendants' motion to dismiss Count V of the complaint, [17], is therefore granted. As Mikolon may be able to cure this deficiency by repleading his claim, however, the dismissal is without prejudice.

### B. The *Monell* Claim (Count VI)

Mikolon also brings (with Parquette) a *Monell* claim against the City of Chicago. *See* [1] ¶¶ 36–42. A municipality may be found liable under Section 1983 only where the municipality itself has caused the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)); *see also id.* (explaining that *respondeat superior* does not attach under § 1983) (citation omitted). Thus, to prevail on a so-called *Monell* claim, a plaintiff must identify a "policy" or "custom" of the municipality that is responsible for the plaintiff's injury. *See Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Such a policy or custom may be: (1) an express policy that causes a constitutional violation when enforced; (2) a widespread practice that, although not an express or written policy, is permanent enough that it constitutes a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by someone with final policy-making authority. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)).

---

[7] In addition, Mikolon has not adequately pleaded the second required element of the claim (*i.e.*, that there was no rational basis for the difference in treatment). As with the first element, the complaint simply alleges the magic words of "no rational basis" but lacks any facts from which to infer irrationality on the part of the officers.

8

Plaintiffs here proceed under the second option. They allege that the City of Chicago encouraged the types of constitutional injuries that plaintiffs purportedly sustained in this case by maintaining, protecting, or accepting, [1] ¶ 40, the following policies and practices:

   a. a code of silence whereby officers refuse to report the unconstitutional and criminal misconduct of other officers . . . ; whereby officers remain silent or give false and misleading information during official investigations to cover up unconstitutional and criminal misconduct . . . ; and whereby officers maintain loyalty to each other over the constitutional rights of citizens;

   b. [a] willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in regards to unconstitutional and criminal misconduct;

   c. [a] failure to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers; and

   d. [a] failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct.

*Id.* ¶ 38. According to plaintiffs, these policies and practices were widespread enough to put Chicago policy-makers on notice of their existence and use. *See id.* ¶ 39.

As with Mikolon's class-of-one claim, plaintiffs allege here only boilerplate conclusions, not well-pleaded facts. And conclusory allegations are not enough to carry a *Monell* claim past the pleading stage. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (applying to *Monell* claims the notice-pleading standards set forth in *Twombly* and *Iqbal*). To state a proper *Monell* claim, plaintiffs must plead factual content sufficient to permit a reasonable inference that

the City maintained a policy, custom, or practice that proximately caused plaintiffs' alleged injuries. *See id.* Plaintiffs, in other words, must plead enough facts to plausibly suggest a "direct causal link" between the purported municipal policy and the alleged constitutional deprivation. *See Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 510 (7th Cir. 1993)); *see also id.* ("The policy or custom must be the 'moving force' behind the alleged constitutional deprivation." (citing *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002))). Vague allegations that the City failed to train its law-enforcement officers in avoiding "unconstitutional and criminal misconduct," or that the City failed to investigate allegations of (or discipline its officers as to) the same, do not satisfy this requirement. Nor does plaintiffs' allegation that the City condoned or embraced a "code of silence" among its officers concerning reports of such "unconstitutional and criminal misconduct."[8]

The absence of any facts to support plaintiffs' policy-or-custom allegations renders those allegations legal conclusions. *See Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (citing *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994)). Legal conclusions, as explained in *McCauley*, "are not entitled to [a] presumption of truth." 671 F.3d at 616 (citing

---

[8] Plaintiff argues that he has stated a proper *Monell* claim because he also alleged that the "widespread practices [discussed above] were the moving force of Plaintiffs' injuries." [23] at 5 (citing Plaintiffs' Complaint, [1] ¶ 41). But paragraph 41 of the complaint states merely that, by "acting willfully, wantonly, and deliberately indifferent towards the [plaintiffs'] constitutional rights," the City "caused the constitutional violations alleged in th[e] Complaint." [1] ¶ 41. This, too, is a conclusory allegation—not a well-pleaded fact suggesting that the City's actions (or lack thereof) were indeed the driving force behind the police officers' behavior in this case.

10

*Iqbal*, 129 S.Ct. at 1951); *see also Looper*, 197 F.3d at 913 ("[B]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient [to state a viable claim for relief].") (citation omitted); *cf. Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009) (observing that allegations do not satisfy *Iqbal* if they are too vague to provide notice to the defendant of what it might have done to violate the plaintiff's rights).

Plaintiffs have not presented in their complaint any well-pleaded facts suggesting that the City of Chicago maintained a well-settled policy that was the moving force behind the police officers' conduct in this case. Without this factual link, plaintiffs' *Monell* claim approaches too closely a claim that seeks to hold the City responsible for all official actions of its employees. Such a claim cannot proceed. *See Brown*, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.") (citation omitted); *Pyles v. Fahim*, 771 F.3d 403 (7th Cir. 2014) ("[Section] 1983 does not permit liability to rest on the doctrine of *respondeat superior* . . . ." (citing *Maniscalco v. Simon*, 712 F.3d 1139, 1145–46 (7th Cir. 2013))). The City's motion to dismiss Count VI of the complaint, [18], is therefore granted. As plaintiffs may be able to cure these deficiencies through repleading (likely after more fully exploring in discovery the circumstances of plaintiffs' individual claims against the officers), this claim is also dismissed without prejudice.

## IV. Conclusion

For the reasons discussed above, the officers' motion to dismiss Count V of the complaint, [17], and the City of Chicago's motion to dismiss Count VI of the complaint, [18], are granted. Both claims are dismissed without prejudice.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 12/11/14